IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VONDA ELAINE GREEN | ) | CASE NO. 04-75144 |
| | ) | |
| Debtor. | ) | CHAPTER 7 |
| | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Trustee's Motion for Debtor to Turn Over Property of the Estate pursuant to 11 U.S.C. § 542 filed July 21, 2006. The Trustee seeks the entry of an order requiring the Debtor to turn over certain monies on deposit in her checking account at the time of the filing of her bankruptcy case. This matter was initially set for hearing in Big Stone Gap on August 15, 2006 and was re-scheduled by the Court for September 5, 2006. At that time, a hearing was not held and the matter was continued at the request of counsel to October 3. The matter was continued at the request of counsel to November 7, 2006, and again to December 5, 2006, and again to January 2, 2007, which latter date was continued by the Court, due to the closing of the courts in honor of the passing of former President Ford, to January 3, 2007 in Abingdon. On the last date counsel again requested that the matter be continued to February 6, 2007 in Big Stone Gap, at which time counsel for the Trustee advised the Court that Debtor's counsel had been requested to sit that day as a substitute General District Court judge and counsel wished to submit the dispute to the Court upon their written briefs, to which request the Court acceded. Both parties have since submitted written arguments to the Court and the matter is now ready for decision.

For the reasons set forth below, the Court concludes that the Trustee's Motion for Turnover should be granted in the agreed amount present in the Debtor's bank account as of the filing date.

FINDINGS OF FACT

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 30, 2004. On Schedule B filed with the Debtor's petition, the Debtor marked the box that she had no checking or other financial accounts. The Debtor also listed a 1999 Nissan Frontier with a current market value of $8,975, subject to a secured claim of $5,728.80 as listed on Schedule D. On Schedule C, the Debtor claimed an exemption under Virginia Code §§ 34-4 and 34-13 of $2,513.37 of the total equity of $3,246.20 in the Nissan. The Debtor did not include any checking or financial accounts as exempt property. The schedules filed with the Court indicate that they were signed by the Debtor on December 27, 2004; the petition indicates that the Debtor signed it on the same date. The Debtor also filed for record in the Clerk's Office of the Circuit Court of Lee County, Virginia on February 22, 2005 a Homestead Deed dated and notarized February 18, 2005 exempting $3,228 from expected 2004 Federal and Virginia income tax refunds. On the Debtor's Amended Schedule B filed March 10, 2005, the Debtor included a 2004 Mitsubishi vehicle and removed the Nissan Frontier. The Debtor's Amended Schedule D lists the Mitsubishi vehicle with a value of $11,990, subject to a secured claim of $11,796.62. The Debtor did not file an amended Schedule C, nor were any further amended schedules filed by the Debtor.

On July 21, 2006, the Trustee filed a motion requesting that the Debtor turn over certain monies held by her in her checking account. The Trustee asserts that at the commencement of this case, the Debtor had $4,870.12 in her checking account, which she did not exempt.[1] The Trustee asserts that at the time the Debtor filed her bankruptcy case, all of her property became property of the estate, including all monies in her checking account. The Trustee further asserts that the Debtor had a right to claim a homestead exemption to protect the monies in her checking account, but she failed to do so. Therefore, the Trustee urges that pursuant to § 542(a), the Debtor should be required to turn over the monies in the checking account at the time of filing because it was property of the estate.

The Debtor asserts in her letter brief dated February 16, 2007 that, "prior to the 341 Meeting,"[2] she was involved in a motor vehicle accident where the Nissan was totaled. As a result, the Debtor asserts that the lien on the Nissan was satisfied and the remaining funds were distributed to her in accordance with the collision coverage on her insurance policy. According to a letter dated July 13, 2006 from an adjuster at GEICO submitted to the Court by Debtor's counsel, the Debtor was involved in an accident on December 2, 2004 in which the Nissan was deemed a total loss. GEICO issued the following payments on December 17, 2004 as a result of

---

[1] The Trustee previously asserted that the Debtor had $5,032.77 in her checking account on the date of filing, but has conceded in his February 27, 2007 letter to the Court that the balance in the Debtor's account as of the date of filing was $4,870.12. The Court assumes that the Trustee intended to state the balance in the account as of December 30, 2004 and not December 31, 2007 as was stated in his letter. The checking account statement dated January 24, 2005 attached to the Debtor's written statement shows a balance of $4,870.12 on December 30, not $4,870.32 as stated in the Debtor's February 16, 2007 letter to the Court.

[2] The Court's docket indicates that the initial meeting of creditors was scheduled for February 17, 2005 and was continued to March 2, 2005.

the accident: $6,035.82 to Wachovia Bank (lien holder); $5,424.18 to Vonda Green; and an additional $13.65 to Vonda Green for postage.  The Debtor asserts in her brief that on December 21, 2004, $5,424.18 was deposited into her checking account and that on December 29, 2004, she "allocated" $3,500 of those funds to the purchase of a replacement vehicle.  According to the Debtor, the remaining funds were utilized for medical costs and various expenses related to the accident.

The Debtor states that the $3,500 down payment check for the replacement vehicle cleared her account on December 31, 2004.  The Debtor asserts that she did not include that amount as an asset on her schedules as it was her understanding that "due to the check having been submitted for payment for a replacement vehicle she did not have access to those funds".  The Debtor further takes the position that the equity in the Nissan was not converted to cash by any deliberate act of the Debtor and that she had no control over said change.  The Debtor argues that based upon the conversion of the equity in the vehicle to cash status, those funds remaining in her checking account on the date of filing should retain their character under the original exemption as noted in the Debtor's petition.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  Determination of a motion to turn over property of the bankruptcy estate is a "core" bankruptcy proceeding by virtue of 18 U.S.C. § 157(b)(2)(E).

11 U.S.C. § 541(a)(1) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" are property of the bankruptcy estate. Property of the estate under § 541(a)(1) includes a debtor's bank account as of the filing date. The relevant balance of the account is that actually existing at the filing date on the bank's books, not the reconciled balance after deducting all outstanding checks. 5 *Collier on Bankruptcy* ¶ 541.09 and ¶ 542.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.); *Bank of Marin v. England*, 385 U.S. 99 (1966).

The relevant time for determining the viability of a trustee's turnover motion is the entity's possession of property "during the case" even if such property is no longer in the entity's possession when the turnover motion is heard. *See Boyer v. Davis (In re U.S.A. Diversified Products, Inc.)*, 193 B.R. 868, 874-75 (Bankr. N.D. Ind. 1995); *In re Gentry*, 275 B.R. 747 (Bankr. W.D. Va. 2001). The fact that the specific funds which are the subject of a turnover motion have been expended is no defense to it as long as the respondent to such motion still possesses the "value" represented thereby. *Gentry*, 275 B.R. at 751.

Prior to July 1, 2005, the Virginia statute required that to perfect a homestead exemption in a Chapter 7 bankruptcy case the debtor was obliged to file the homestead deed for record no later than five days after the date originally set for the section 341 meeting of creditors.

> To claim an exemption in bankruptcy, a householder who (i) files a voluntary petition in bankruptcy or (ii) against whom an involuntary petition in bankruptcy is filed shall set such real or personal property apart on or before the fifth day after the date initially set for the date of the meeting held pursuant to 11 U.S.C. § 341, but not thereafter.

Va. Code § 34-17(A) (2005 Repl. Vol.). The general rule is that after the time for filing a homestead deed has passed, the debtor is precluded from amending a homestead deed for

purposes other than adjusting the value of property previously included in the homestead deed and new property cannot be exempted. However, when a debtor does not own or have an interest in property at the time the exemption must be asserted, then an amendment may be allowed to include new property as long as the maximum exemptions have not been taken. *See In re Waltrip,* 260 F. Supp. 448 (E.D. Va. 1966); *In re Smith,* 45 B.R. 100 (Bankr. E.D. Va. 1984); *In re Custis*, 87 B.R. 415 (Bankr E.D. Va. 1988). In this case any right the Debtor may have had to have filed an amended homestead deed is irrelevant because there is no evidence that any such amended deed was ever filed prior to the submission of this dispute to the Court for decision. The Court is left to speculate as to why a homestead deed was filed on February 22, 2005 claiming an exemption in equity in a truck which had been destroyed more than two months previously and prior to the filing date of her petition in this Court.

As noted above, the Debtor asserts that she did not include the $3,500 as an asset on her schedules as it was her understanding that "due to the check having been submitted for payment for a replacement vehicle, she did not have access to those funds". However, this explanation for the Debtor's rationale is inconsistent with her own represented facts because the Debtor did not "allocate" the money to the replacement vehicle until after she had signed her schedules and petition. Furthermore, she did not claim the exemption in the recorded homestead deed in the Nissan truck until more than two months after the truck had been wrecked and she had been paid for it. While the Debtor has argued that she should be given the benefit of the equity in the Nissan truck which she claimed in her homestead deed, the Court is unable even to reach the merits of that contention because it is apparent that the Debtor no longer owned such equity either at the time she signed her schedules or at the time she claimed

6

such exemption by signing and filing for record her homestead deed. It was the Debtor's responsibility to review her schedules carefully before signing them and submit accurate information to this Court at the time she filed her petition. It is clear that this Debtor utterly failed in that responsibility. The incontestable fact is that even more than two years after the date she filed her petition, she has never filed fully accurate schedules in this case. Furthermore, she has never filed an amended schedule C claiming any exemption in the money which was in her undisclosed bank account at the time of such filing nor any amended homestead deed to assert such claim. While she has produced evidence to the effect that most of the money deposited into her account in December had been expended by the latter part of the following month, she has made no contention in response to the Trustee's Motion that she does not have now the funds or other "value"[3] to comply with a turnover order. If such were the case, it would be her responsibility to raise it as a defense to the entry of such an order. Because she has not claimed a valid exemption in the funds held on deposit in her bank account as of the filing date, she must pay over to the Trustee for the benefit of her creditors the balance of such account as of such date.

## CONCLUSION

An order granting the Trustee's Motion for Turn Over in the amount of $4,870.12 will be entered contemporaneously with the signing of this decision.

---

[3] *See Gentry,* 275 B.R. at 751.

This 1st day of March, 2007.

/s/ William F. Stone, Jr.
_____
UNITED STATES BANKRUPTCY JUDGE